had no resources. The taxpayer was an operator in real estate and was well acquainted with land values in that locality in 1920. In December of that year he made an investigation to ascertain the value of the The Thornton Plantation and became convinced that the property could not be sold, at that time, for a price sufficient to pay more than half of the aggregate amount of debts against it secured by the first and second mortgages. In the light of all the facts disclosed by the evidence, the Board is of the opinion that the taxpayer's claim against Asher was a bad debt because the debtor was insolvent and the security worthless. The amount of $11,423.02 should be allowed as a deduction from gross income of the taxpayer for 1920.

The evidence adduced at the hearing convinces the Board that the only useful value salvaged from the dredge boat bought by the taxpayer in 1917 was in the engine, which was removed and carried on the assets account at $600. All expectation of realizing anything from the sale of the other parts of the boat as junk was abandoned in 1920 and the remaining cost, less depreciation which, correctly computed, was $386.05 at that date, was a proper deduction as a business loss from the income of the taxpayer for the year ended December 31, 1920.

The taxpayer was in business as an individual during the year 1920. Whether he paid business expenses from his personal bank account or from the bank account of his business is wholly immaterial. In either case he is entitled to deduct actual business expenses from his gross income as reported for Federal income tax purposes. In the schedule of expenses submitted by the taxpayer at the hearing of the appeal, the amounts of $471.86 interest; $57.03 insurance on rental property; $135 repairs on rental property; and $275 agreed to by the parties as the correct depreciation on an automobile used for business purposes,—are legal deductions from the gross income of the taxpayer for 1920, and should be allowed. The amount of $400.44, deducted as traveling expenses, was not supported by sufficient evidence to convince the Board that it was incurred entirely for business purposes and is disallowed. The evidence discloses that the taxpayer kept his accounts on a receipts and disbursements basis. The receipted tax bills offered in evidence show on their face that the payments of taxes for which deduction is claimed were made in 1921. The amount involved, $398.49, therefore, is not deductible from gross income for 1920.

---

Appeal of **GULF COAST MACHINE &**          Docket No. 1302.
                **SUPPLY CO.**

Submitted February 19, 1925; decided March 16, 1925.

*H. A. Mihills, C. P. A.*, for the taxpayer.

*Benjamin H. Saunders, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

This appeal is from a proposed additional assessment of income and profits taxes for the year 1920 in the amount of $2,314.18, as set

forth in the Commissioner's deficiency letter of November 4, 1924. At the hearing, the Commissioner's answer was amended in respect cf the amount of depreciation so as to increase the amount of the deficiency asserted in the 60-day letter. The taxpayer claims a deduction for depreciation, wear and tear, and obsolescence of buildings, machinery, and other business assets, which the Commissioner has disallowed as excessive. From the taxpayer's petition, documentary evidence and oral testimony taken at the hearing, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a corporation engaged in the business of manufacturing oil well supplies, drilling equipment, etc., and operating a general machine shop, with its principal office at Beaumont, Tex. It began business in the location occupied in 1920 in the year 1919. The property in question consists of a machine shop and other buildings situated on premises leased from the Santa Fe Railroad Co. under a year to year lease containing a clause whereby either party may, on 30 days' notice, terminate the lease. In contemplation of such termination of the lease, the taxpayer in 1922 acquired a tract of land nearby that might be used as a shop site. On this alleged anticipated termination of the lease the taxpayer bases its claim for obsolescence in 1920.

The machine shop and blacksmith shop are constructed of steel framing with corrugated iron sides and roofing, as is common in such buildings, the machine shop having a cement floor with a wooden covering. There are other wooden sheds and smaller buildings adjacent. Under the terms of the lease these buildings may be removed by the taxpayer. Because of topographical depression, the premises become flooded during rainy seasons, causing rust and other damage to the machinery and buildings.

The taxpayer claims a depreciation of 10 per cent on the machinery and equipment, and 20 per cent on the buildings, whereas the Commissioner allowed 5 per cent on the equipment and 10 per cent on the buildings. The present buildings have been occupied for seven years and are still in use. Machinery was acquired from time to time, the more expensive items, such as steam hammers, drills, and lathes, being bought second hand.

In arriving at valuations for depreciation purposes, the taxpayer has used the book value of the property at the close of the year 1920. The Commissioner proposes in his amended answer a computation based on an average of the values of the property at the beginning and at the end of the year, but no evidence was introduced on which to base the proposed computation.

### DECISION.

The determination of the Commissioner of a deficiency in tax for the year 1920, in the amount of $2,314.18, is approved.